SNEED, J.,
delivered the opinion of the Court.
This is an injunction bill to restrain the sale of a lot of land conveyed. by the complainant to the defendant Johnson in trust, to secure a debt due to defendants Fenner, Bennett and Bowman. The deed of trust bears date the 4th December, 1867, and was executed to secure a note of that date for five thousand dollars, due sixty days from date; and the bill alleges that said deed provided that, in case said note was not paid at maturity, the defendant Johnson, the trustee, was authorized to sell the property after advertising said sale for thirty days in one of the daily papers published in Memphis; that he had advertised said sale in the Memphis Daily Appeal, and that ac *606 cording to said advertisement, the sale of said property, under the deed, will take place on the 5th December, 1868. The fiat for the writ of injunction was obtained on the day so advertised for the sale, and thereupon the bill was filed.
The complainant seeks to enjoin said sale upon the grounds, first, that at the time of the execution of his said deed, by which he conveyed said lot in trust to defendant Johnson, the lot was in the actual adverse possession of certain parties who had bought it at a tax sale; that the complainant had brought his action of ejectment to recover said lot so adversely held, and a verdict and judgment had been rendered in his favor; but that at the time of filing the bill, the defendants in said ejectment were threatening an appeal from his said judgment.
The second ground assumed in the bill is, that the the sale had been illegally advertised and in violation of the terms and provisions of the act of 1868, c. 36, which requires all legal advertisements to be made in some newspaper to be designated by the Governor, and that the Memphis Daily Appeal, in which said sale was advertised, was not a newspaper so designated.
The complainant assumes, as the third and last ground, that he had already paid to defendants Fen-ner, Bennett and Bowman, on said debt, the sum of one thousand dollars, and had executed to them an order on Estes & Jackson, attorneys, for the proceeds of a claim for about $6,000, which Estes & Jackson held for collection for complainant; that the defendants Fenner, Bennett and Bowman received and now *607 bold said order; by reason whereof the complainant insists that they have released and relinquished their said security under said deed of trust.
There was a demurrer to' the bill, which was disallowed by the Court, and the defendants have appealed.
"We are of opinion that the demurrer was well taken and should have been allowed. The bill does not charge that the defendants accepted the order in payment or satisfaction of the debt, and the indemnity of the deed was not therefore extinguished. It seems from the bill that the order was delivered and the $1,000 paid in July, 1868, and it was not before the fall of that year that the property was advertised to be sold. If the order had in the interval been paid, that would have been an extinguishment of the debt, and of the security also — and the complainant should have alleged it, and for the want of the allegation either that the order was accepted as payment, or that the same had actually been paid, the bill to that extent is demurrable.
The act of 1868, c. 36, requires. that legal advertisements shall be published in newspapers to be designated by the Governor. As legal advertisements, it enumerates orders' of publication, attachment, and nonresident notices, sales of land by decrees, executions, mortgages, and for taxes by sheriffs, clerks, and all other officers, together with all advertisements required by law. Any publication made contrary to said act shall be null and of no effect. .
Waiving all other questions which might be made *608 upon this extraordinary statute, we hold that upon its face it has no reference to such sales as those of common trustees created by act of the parties. The word mortgages, as used in the statute, would seem to import that such was its intention, but the context shows that only sales made by officers of the law are referred to. Private sales under private contracts are not legal advertisements in the sense of the law. And even if this were not so, as a matter of law, it would be difficult to maintain that the rights of these parties to advertise in a particular way, as vested by the execution and acceptance of the deed, could be abrogated by a subsequent statute requiring the advertising to be done in a manner different from that contracted for in the deed.
The question as to the effect of the allegation of the bill upon demurrer, that the lot in question, at the time of the execution of the deed, was held and claimed adversely by other parties who had bought it at a tax sale, presents more difficulty.
Our champerty laws provide that if any person sell any lands or tenements not having possession of them by himself, agent or tenant, the same being adversely held by color of title, champerty shall be presumed until the purchaser show that such sale was bona fide: Code, s. 1780.
It is assumed by the demurrer that the complainant, is estopped from setting up the defense of an adverse. holding by the solemn warranties of his own deed ; and of this opinion is the Court. It is a familiar doctrine of the law, founded in sound policy and sound *609 morals, that where one party, by bis deliberate act or solemn deed, has asserted a fact upon which another in privity with him has been induced to act upon the assumption of good faith in said act or , deed, the former shall not be heard to gainsay or deny said act or deed. The whole doctrine and policy of law of estoppel is thus forcibly and briefly stated by an eminent jurist of a sister State: “When a fact has been admitted or asserted for the purpose of influencing the conduct or deriving a benefit from another, so that it can not be denied without a breach of good faith, the law enforces the rule of good conduct as • a rule of policy and precludes the party from repudiating his representations or denying the truth of his admissions: ” Vide 5 Ohio B.., 199; Bawle Cov., 407. The complainant by' his deliberate deed has asserted his title, unencumbered, to the lot in controversy, and the defendants have accepted said deed as a security for the complainant’s debt. Can he now be heard in a Court of conscience to disclaim and repudiate his own solemn action, and to deny to the complainants the right to their’ security to the extent of his interest in the lot, upon the ground that at the time the deed was executed the lot was adversely held^a fact of which the complainant does not avow his ignorance at the time of said execution ? And it appears upon the face of the bill itself that the adverse claim has already been adjudicated in an action of ejectment in favor of the title of the complainant. Is this kind of case within the spirit and meaning of our champerty laws? We think not.
*610 We are referred to the authority of the case of Williams v. Hogan, Meigs’ R., 189, in support of the argument that a sale by one out of possession, of land adversely held, is void for all purposes. It is neither good as against the adverse possession or title, nor as between the parties themselves: Meigs’ E.., 187. That was an action of covenant on the covenants of warranty in a deed, and to the declaration there was a demurrer, assigning as a cause of demurrer that at the time of the execution of the deed the land was adversely held and possessed by a paramount and superior title. In this case there is no allegation of paramount title; but it is alleged that the adverse possession is under a tax sale, which has already been adjudicated in favor of the complainant’s title. That was an action in a Court of Law, and the question was whether a void covenant could be the foundation of a legal demand. This is a proceeding in a Court of Equity, by which the complainant seeks a benefit from his own wrong to defendants, in inducing them to accept the security of his own solemn deed, which he now alleges to have been champertous and void. It seems that such a doctrine would be a perversion of the law upon the subject of champertous sale, as well as subversive of the objects and traditions of a Court of Equity. It is said in the very case upon which complainant relies, that the object and policy of the champerty laws were, that those in actual possession of land should not be molested by suits founded upon pretended or dormant claims, and by the prospect. of large profit, which attacked the quiet and repose. of *611 society, and made our Courts of Justice the theatre upon which to consummate speculations, not more respectable, and much more disastrous to society, than those of the lottery office or the gaming table, unless such suits were instituted and conducted bona fide by the proper owners, upon whom the law had cast the title, for their own proper benefit and at their own proper risk and costs. The buyer, in view of his ever restless cupidity, it was especially important to restrain:” per Reese, J., Williams v. Hogan, Meigs’ R., 189. We cite this language to show that it was against pretended and dormant claims to land that these champerty laws were intended to guard the public and likewise to guard the Courts. Judge McKinney, in a later case, uses this language: “The cham-pertous conveyance, at least, as against the person sought to be effected thereby, is a nullity in law. It is an attempt to convey the title under circumstances which, in law, make the deed wholly ineffectual for that purpose. And as the title must still exist and be vested in some one, it is considered as remaining in the vendor, and he may sue and recover the land, though such recovery would enure to the benefit of the purchaser, the conveyance being good as between the parties, at least by way of estoppel:” 4 Kent, 448, et vide 7 Wend., 377; 2 Hill, N. Y. Rep., 526.
Upon this authority we hold that upon this point also the demurrer was well taken, and that under the facts of this case, the complainant is estopped by the terms of his deed from relying upon the adverse holding under a tax sale to defeat the defendant’s right *612 to a sale of his interest in the land; and in this view the decree will be reversed, the demurrer allowed, and the bill dismised.